Filed 5/22/14  In re A.P. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.P., Person Coming Under the Juvenile Court Law. | B251593 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>Y.A.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK89723) |

Appeal from an order of the Superior Court of Los Angeles County.  Tony L. Richardson, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————

Mother, Y.A., appeals the juvenile court's order terminating her parental rights to her son, A.P. She contends the Department of Children and Family Services failed to inquire into whether A.P.'s father, R.P., had any Indian ancestry under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). We find that because father was merely an alleged father, inquiry into father's Indian heritage under ICWA was not required.

**BACKGROUND**

Because this appeal concerns only whether the requirements of ICWA were satisfied, we will limit our factual summary to those facts relevant to ICWA.

On September 14, 2011, then 15-month-old A.P. was detained by the Department after mother was arrested for physically abusing him in a thrift store in Covina. Mother's two older children were in a guardianship with their maternal grandmother because of mother's drug use. During an interview with a Department social worker and a Sheriff's detective, mother identified R.P. as A.P.'s father, but indicated that father "is not involved in [A.P.'s] life and does not provide . . . any financial support."

When mother was seven months pregnant with A.P., she and father were arrested (mother for driving under the influence of a controlled substance, and father for possessing a controlled substance and violating his parole). At the time of A.P.'s detention, father was in custody at the West Valley Detention Center. Father was being held, without bail, on a U.S. Marshall's hold.

On September 19, 2011, mother filed a Parental Notification of Indian Status, indicating that she had no Indian ancestry. She also completed a Parentage Questionnaire, identifying father as A.P.'s father, but indicating that he was not present for A.P.'s birth, did not sign A.P.'s birth certificate, that he had not held himself out as A.P.'s parent, that no paternity testing had been completed, and that there were no child support or family law orders establishing father's paternity. Accordingly, at the September 19, 2011 detention hearing, the trial court found father to be only an alleged father, and that ICWA did not apply to mother.

The Department's investigation revealed other children of father had been declared dependents of the court. A February 28, 2005 sustained petition found that

2

father neglected a son, I.P., and a daughter, D.G. because of his history of substance abuse. Father's family reunification services were terminated on February 27, 2006, and I.P. was placed in a legal guardianship with his maternal grandmother (it is unclear what happened to D.G.). An April 9, 2007 sustained petition for a different child, M.P., alleged that father's "history of substance abuse and drug related criminal history" placed M.P. at risk of harm. Family reunification services were terminated on April 21, 2008, and father's parental rights to M.P. were terminated on May 28, 2010.

A search into father's criminal background revealed an "extensive drug related criminal record dating back to 1998" and that father was serving a two-year prison sentence for violating his parole for sales of controlled substances. He was also awaiting trial on federal drug charges, and faced at least five to ten years in federal prison.

A Department social worker interviewed father on October 3, 2011, while he was in custody at the West Valley Detention Center. Father reported that he was not present for A.P.'s birth, and was not sure if mother received prenatal care during her pregnancy, as she was using drugs. He "has seen his son once since his birth as he has been incarcerated" for the last year. Father believed he would be unable to reunify with A.P., but his hope was that mother could obtain custody of their son. The social worker's report is silent about whether the social worker asked father about any Indian heritage. The Department recommended that no reunification services be ordered for father, as he was merely an alleged father and had failed to reunify with A.P.'s half siblings.

The Department filed a first amended petition on October 26, 2011 (which included new allegations of substance abuse by mother) on which father was named, with a check mark appearing next to the "biological" designation on the petition's cover sheet.

At the January 23, 2012 adjudication hearing, mother filed a waiver of rights, submitting on the petition, and the petition was sustained as amended. The court ordered that father was not to receive reunification services.

On July 16, 2012, father was in federal custody, in the Leavenworth Penitentiary in Kansas.

3

The Department interviewed paternal great-grandmother and paternal grandfather regarding placement of A.P. However, due to paternal grandfather's job as a long-distance trucker, and paternal great-grandmother's health, neither was available for placement.

Mother had not made progress with her reunification plan, and was incarcerated, so the court terminated mother's reunification services and set a Welfare and Institutions Code section 366.26 hearing. The Department's section 366.26 report indicated that "[f]ather has not had any contact with [A.P.] since the case was opened." An attached birth certificate did not identify A.P.'s father. The Department recommended that parental rights be terminated with a permanent plan of adoption, as A.P.'s foster parents wanted to adopt him.

At the August 2, 2013 contested Welfare and Institutions Code section 366.26 hearing, the trial court terminated the parental rights of mother and father. Counsel for the Department brought to the trial court's attention that no ICWA finding had been made as to father, as a matter of "housekeeping." The trial court ruled that it would defer making any findings under ICWA as to father until the next court hearing.

Father was never appointed counsel, and never appeared for any hearings.

Mother filed a timely notice of appeal.

## DISCUSSION

Before parental rights may be terminated, "where the court knows or has reason to know that an Indian child is involved, the party seeking . . . termination of parental rights to[] an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).) An "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (§ 1903(4).)

A biological connection to a tribe through a biological parent or parents must be shown in order to trigger ICWA's requirements. (See 25 U.S.C. § 1903(9) [" 'parent'

4

means any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom. It does not include the unwed father where paternity has not been acknowledged or established"]; *In re E.G.* (2009) 170 Cal.App.4th 1530, 1533.) Therefore, a minor cannot claim Indian heritage through an alleged father until biological parentage is established. (*In re E.G.*, at p. 1532; see *In re Daniel M.* (2003) 110 Cal.App.4th 703, 708.) Moreover, "[a]n alleged father who has not acknowledged or established he is a parent within the meaning of title 25 United States Code section 1903(9) lacks standing to challenge a violation of the ICWA notice provisions." (*In re Daniel M.*, at p. 709.) An alleged father may establish or acknowledge paternity by voluntarily signing a declaration of paternity at the time of the child's birth or through scientific testing. (*Id.* at pp. 708-709.)

Mother's claim that the Department was required to inquire whether father had Indian heritage lacks merit, because father was only an alleged father. (*In re E.G.*, *supra*, 170 Cal.App.4th at p. 1532; see *In re Daniel M.*, *supra*, 110 Cal.App.4th at p. 708.) Mother concedes no ICWA inquiry is necessary for an alleged father. But mother contends the juvenile court impliedly found father to be a biological father, reasoning that father was listed as the biological father on the first amended dependency petition, and that the Department considered placing A.P. with father's relatives. Mother also contends the juvenile court deferred a ruling on father's ICWA status, which shows the trial court assumed father was A.P.'s biological father. This argument also is without merit.

Here, the record reveals that father's status was never elevated from that of an alleged father. (See *In re Paul H.* (2003) 111 Cal.App.4th 753, 760 [a determination must be made in order for a father's status to change].) No steps were ever taken by father to change his status; genetic testing was never sought and father never signed A.P.'s birth certificate. (*In re Daniel M.*, *supra*, 110 Cal.App.4th at pp. 708-709.) Although mother named R.P. as the father, he was never involved in A.P.'s life. It is irrelevant that the Department considered placing A.P. with father's relatives, as nonrelatives are routinely considered for placement. (Welf. & Inst. Code, §§ 361.2,

5

subd. (e), 362.7.)  We also cannot infer from the trial court's order that it would "defer making an I.C.W.A. finding as to father" as a finding that father was A.P.'s biological father.  The record simply does not show any evidence was ever presented to show father's biological connection to A.P. to trigger ICWA inquiry and notice requirements.

Where no biological connection between father and A.P has been established, and mother claims no Indian heritage, the Department had no "reason to know" that an Indian child was involved in this proceeding.  (25 U.S.C. § 1912(a); see also Welf. & Inst. Code, § 224.2, subd. (b).)  Therefore, the Department's obligation to provide notice is not triggered.  (See *In re E.G., supra*, 170 Cal.App.4th at p. 1533.)

## DISPOSITION

The order terminating mother's parental rights is affirmed.


GRIMES, J.

We concur:


BIGELOW, P. J.


RUBIN, J.

6